EXHIBIT C

Presentence Investigation Report,
Dated July 18, 2018

# PreSentence Investigation Report

## PRESENTENCE INVESTIGATION REPORT FACESHEET

| County | Primary Court Case # | Court | Probation PIN | Investigation Case # |
|---|---|---|---|---|
| Monroe | I2018-0208 | Monroe County Court | | CCI-2018-19724 |

| Agency Code | Inv Probation Officer | Date Ordered | Date Completed |
|---|---|---|---|
| NY027013G | Adam Phillips | 06/27/2018 | |

### A. PERSONAL INFORMATION

| Name (Last, First, Middle) | Maiden Name | Aliases |
|---|---|---|
| **Hernandez, Abigail** | | |

| Present Address/Mailing Address | Telephone Number | Total # in home |
|---|---|---|
| 31 Grafton St., Rochester, NY 14621 | | 5 |

| Date Of Birth | Age | Sex | Height | Weight | Eyes | Hair | Marital Status |
|---|---|---|---|---|---|---|---|
| | 21 | Female | 4'10" | 150 | Brown | Brown | Single (never married) |

| Social Security | Military Service | Ethnic Origin | Race |
|---|---|---|---|
| | Non-Veteran | Hispanic | White |

| Place of Birth | Citizenship | English Speaking | ICE Status | Immigration # |
|---|---|---|---|---|
| Zacapoaxtla, Puebla, Mexico | Mexico | Yes | Illegal Alien | |

| Annual Income | Employment Status | Employer |
|---|---|---|
| | Not in Labor Force | |

| Education Level | School Status | School |
|---|---|---|
| High School Diploma | | |

### B. PRESENT COURT PROCEEDING

| Judge | Prosecuting / Presentment Attorney |
|---|---|
| Vincent M. Dinolfo | Greg Colavecchia |

**Counsel / Law Guardian Name and Address**
Michael F. Geraci - Trevett Cristo Salzer & Andolina P.C. Two State St Ste 1000, Rochester, NY 14614

| Court Case # | CJTN | Offense Date | Arrest Date | Info / Indict / Petition Date | Conviction / Adjudication Date |
|---|---|---|---|---|---|
| I2018-0208 | 68496752Q | 02152018 | 02/20/2018 | 03/09/2018 | 06/27/2018 |

| Court Case # | Info / Indict Charges / Nature of Petition | Final Conviction / Adjudication Charges | By |
|---|---|---|---|
| I2018-0208 | PL 490.20 01 D F 0 - Making A Terroristic Threat - 2 ct(s) | PL 240.50 01 A M 3 - Falsely Reporting A Crime/Catastrophe/Emergency-3rd Degree - 1 ct(s) | Plea |

### C. LEGAL INFORMATION

| NYSID | Local Client ID | FBI Number |
|---|---|---|
| 14211629M | | K8VRRCJWN |

| Court Case # | Status of Defendant / Respondent | Detention Date |
|---|---|---|
| I2018-0208 | Detention | |

## Sentence Investigation Report

| | | | |
|---|---|---|---|
| **Designated Felon** | | **Youthful Offender** | |
| **Predicate Felon** | | Eligible | |
| **Domestic Incident Report** | No | Recommended | |
| **Domestic Violence** | No | | |
| **DNA Status*** | Required | **Certificate of Relief from Disabilities by Court** | |
| **DNA Collection Required*** | Yes | Eligible | |
| **DNA Collection Date*** | | Recommended | |
| **Fingerprintable Offense** | Yes | | |
| **SORA Registerable Case*** | No | | |
| **Juvenile Offender** | | | |
| *Not applicable, if adjudicated YO | | | |

| Scheduled Sentence / Disposition Date | Actual Sentence/Disposition Date |
|---|---|
| 07/19/2018 | |

**Sentence / Disposition**

| Court Case # | Drugs Used at Offense | Alcohol Used at Offense | BAC | BAC Test Refused | Personal Injury or Fatality |
|---|---|---|---|---|---|
| I2018-0208 | | | | | |

| Number of Other Pending Charges / Petitions | |
|---|---|
| **Number of Prior Court Convictions / Adjudications** | |

| Prior DWI / DWAI Convictions | Number of DWI / DWAI Convictions in Last 5 Years | Drivers License # |
|---|---|---|
| | | |

### D. CO-DEFENDANTS / CO-RESPONDENTS

| Court Case # | Name | Age | Address | NYSID |
|---|---|---|---|---|

### E. PARENTS AND/OR SPOUSE (INCLUDES STEP-FAMILY)

| Name | Relation | Age | Address | Occupation | Comment |
|---|---|---|---|---|---|
| Arellano, Laura | Mother | | 31 Grafton St., Rochester, NY 14621 | | |
| Flores, Eufracio | Stepfather | 55 | 31 Grafton St., Rochester, NY 14621 | | |

### F. SIBLINGS AND CHILDREN (INCLUDES STEP-FAMILY)

| Name | Relation | Age | Address | Occupation | Comment |
|---|---|---|---|---|---|
| Flores, Brian | Brother | | 31 Grafton St., Rochester, NY 14621 | | |
| Flores, Yoloctzen | Sister | | 31 Grafton St., Rochester, NY 14621 | | |

## Sentence Investigation Report

### G. VERIFICATIONS

| | Verified | In File | Method | Source | By Whom | Date |
|---|---|---|---|---|---|---|
| Date of Birth | Yes | Yes | Viewed | School records | Phillips, Adam | 06/18/2018 |
| Citizenship | | | | | | |
| Legal History | Yes | Yes | Viewed | eJustice report | Phillips, Adam | 07/16/2018 |
| Present Offense/Conviction | Yes | Yes | Viewed | Court records | Phillips, Adam | 06/27/2018 |
| Current Address | Yes | Yes | Interviewed | Parents | Phillips, Adam | 07/13/2018 |
| Employment and Salary | Yes | No | Interviewed | Defendant | Phillips, Adam | 07/06/2018 |
| Mental Health | Yes | No | Interviewed | Parents | Phillips, Adam | 07/13/2018 |
| Physical Health | Yes | No | Interviewed | Parents | Phillips, Adam | 07/13/2018 |
| Treatment Provider | Yes | No | Interviewed | Parents | Phillips, Adam | 07/13/2018 |
| Education/Training | Yes | Yes | Viewed | School records | Phillips, Adam | 06/18/2018 |
| Victim's Damages/Losses | Yes | Yes | Viewed | Victim statement | Phillips, Adam | 07/05/2018 |
| Military | Yes | No | Interviewed | Defendant and parents | Phillips, Adam | 07/06/2018 |
| Other | | | | | | |
| Other | | | | | | |

### H. PROFESSIONAL LICENSES

| Type | License Number | Granted By |
|---|---|---|
| | | |
| | | |
| | | |

### I. FIREARM LICENSES

| Type | License Number | Granted By |
|---|---|---|
| | | |
| | | |
| | | |

### J. VEHICLES

| Owner | Make | Model | Color | License Plate | VIN | License State |
|---|---|---|---|---|---|---|
| | | | | | | |

### K. IDENTIFICATION MARKS

| Location | Description |
|---|---|
| Neck | Small group of circle scars |


## Sentence Investigation Report

### LEGAL HISTORY
Legal History will be provided to the Court via an Attached Document.

### ANALYSIS OF LEGAL HISTORY
The defendant has no legal history of record.

### DESCRIPTION OF PRESENT OFFENSE

On 2/20/18, the defendant was arrested by Rochester Police after an investigation revealed she made a terroristic threat toward persons at East High School.

A Facebook account using the moniker 'Martin Doll' posted written threats on the East High School Facebook page which read "I'm coming tomorrow morning" and "I'm going to shoot all of ya bitches". These threats were posted beneath a photograph of East High School teachers and students inside East High School.

The following investigative information was compiled from the Rochester Police investigation paperwork and interviews. A search warrant was submitted to Facebook on 2/15/18 ordering information related to the 'Martin Doll' account. On 2/16/18, the search warrant was returned by Facebook, which included account user information and account activity. Many Facebook searches were conducted by this user, including searches of Rochester City School District Staff and family members, City of Rochester Transportation staff and family members, as well as searches of the defendant herself and her family members. The search warrant information included the Facebook user's phone number and IP address. A subpoena was subsequently submitted to determine the subscriber address for the IP address. Using the information provided by Facebook, police were led to the the defendant, who denied any knowledge of the post and denied having a Facebook account. While interviewing the defendant, Rochester Police learned there may have been a shotgun belonging to the defendant's stepfather in the residence shared by the defendant and her parents. Police spoke with the defendant's stepfather, who stated he did own a shotgun and kept it in his truck. Consent was given to Rochester Police to search the home and vehicle for firearms, but the shotgun was unable to be located. A report was then made concerning the missing shotgun. The defendant's stepfather was very cooperative throughout the process and appeared very concerned and nervous when the shotgun was not located. He stated he would continue to look for it and agreed to call 911 if it was located.

On 2/20/18, the subpoena request for the IP address was returned, and the subscriber address was the defendant's residence. Rochester Police responded to the home and were greeted by the defendant's mother, who told police her husband had located the missing shotgun. She asked if police would take it for safekeeping. The defendant was then taken to the Rochester Police Department to be re-interviewed. During the interview, the defendant admitted to creating the Facebook account of 'Martin Doll', with the intent of concealing her identity. She stated she did not get along with approximately 50% of students at East High School because they were "mean." The defendant then admitted to posting a threat to the East High School Facebook page. The defendant stated she had watched an "Inside Edition" segment on the school shooting in Parkland, Florida,

## Sentence Investigation Report

and that she was mad about what had happened. She stated she understood how that shooter must have felt, and that she sometimes feels the way she imagined him to have felt. The defendant acknowledged her threatening post would have caused fear, and stated this was her intent. She reported "kind of" getting so upset she may have wanted to turn to violence. She stated after hearing of the Parkland, Florida shooting, a similar action could be a possibility. The defendant named a particular East High student she didn't get along with, and reported she had thought about becoming physically violent with her. The defendant also stated she knew her stepfather's shotgun was usually in the bedroom closet, and noted it was on the front room on 2/19/18. The shotgun was moved from safekeeping to evidence as a result.

The defendant was subsequently charged with NY Penal Law § 490.20 (1) Making A Terroristic Threat - D F. The matter was held for grand jury, which returned an indictment for two counts of NY Penal Law § 490.20 (1) Making A Terroristic Threat - D F. On On 6/27/18, she pled guilty to NY Penal Law § 240.50 (1) Falsely Reporting An Incident 3rd Degree - A M, and a presentence investigation was ordered returnable for 7/19/18.

### ARRESTING OFFICER'S STATEMENT

An arresting officer's statement request was sent on 6/25/18, but was not returned at the time of this writing.


## Sentence Investigation Report

### DEFENDANT'S / RESPONDENT'S STATEMENT

The defendant was interviewed at the Batavia Federal Detention Center on 7/6/18, where she is being held by U.S. Immigration and Customs Enforcement on immigration charges. The defendant presented as cooperative and polite throughout the interview. She appeared confused by complex questions and those that required a certain level of insight or self-reflection. The defendant noted she was doing well in the detention facility and was treated well. She mentioned she had "a job" in the facility washing bathrooms, washing tables, and giving out food trays, and likes to spend her free time being outside and sleeping. Federal Detention staff reported she has had no incidents of note during her time there. The defendant did state she would like to return to the Monroe Correctional Facility, where she reported she was treated very well, and preferred in part due to their 'A New Leash on Life' program in partnership with the Humane Society. The defendant provided background information and discussed the present offense.

The defendant admitted to creating a Facebook account under a false name and posting threatening messages to the East High School Facebook page. She stated had previously attended East High School, and former friends there had been talking behind her back and making fun of her. She declined to provide specifics, but appeared hurt and embarrassed by what had been said. The defendant stated the idea to post the threat to shoot individuals at the school "popped into [her] head," and may have been influenced by a segment she had watched on "Inside Edition" by the school shooting in Parkland, Florida. She stated posting the threat was impulsive, and that her "mind told [her] not to do it." The defendant shared that she did not intend to injure or scare anyone, but because individuals who attended East High School were being "mean" to her, she was going to do something "mean" back. When asked about the shotgun, the defendant stated she "[doesn't] use guns" and had no intention of following through on the threat she made. She explained she did not understand the severity or consequences of her actions. The defendant expressed remorse, and stated she would like to apologize to East High School for making people scared.

### VICTIM INFORMATION / STATEMENT

A victim statement was returned, and is included under confidential cover.

### SOCIAL CIRCUMSTANCES
#### Family and Environment

The following information was compiled from an interview with the defendant on 7/6/18, an interview with the defendant's mother and stepfather via telephone with an interpreter on 7/13/18, and school records. The defendant's parents were very cooperative and forthcoming during the interview. They both became audibly emotional, and they appear to be very involved and care a great deal for the defendant.

The defendant resides with her mother, Laura Arellano, her stepfather, Eufracio Flores-Moya, her 16-year-old brother, Bryan Flores, and her 3-year-old sister, Yoloctzen. The defendant's parents reported they both have permanent resident status, and are both going through the citizenship process. The defendant's siblings are United States citizens as they were born in the US. The

## Sentence Investigation Report

defendant's stepfather's primary employment is through RTS as a driver, and the defendant's mother is a homemaker.

The defendant was born in the city of Zacapoaxtla in the Mexican state of Puebla. Her mother, Laura Arellano, illegally emigrated to the United States shortly after her birth, and she was left in the care of her grandmother. The defendant did not know her biological father. During this time, Ms. Arellano set about establishing herself in New York City before sending for the defendant to join her. At the age of three, the defendant was brought into the United States illegally and joined her mother in New York City. There Ms. Arellano met the defendant's now stepfather, Eufracio Flores-Moya, with whom she has been for approximately 22 years, and who is the only father figure the defendant has known. The defendant's parents disclosed the defendant's biological father was killed in a stabbing in Mexico in 2005. While in New York City, the defendant's half-brother, Bryan Flores, was born to Ms. Arellano and Mr. Flores-Moya.

After 10 years in New York City, the family moved to Rochester, to pursue what Mr. Flores-Moya described as economic opportunity and a peaceful environment. The defendant's parents reported the defendant was well-behaved throughout her childhood, and presented no major behavioral difficulties. The defendant's parents stated there was no history of involvement with the police or Child Protective Services. They did note the defendant was always very dependent on her parents due to an intellectual disability, and were told by school service providers such would always be the case.

When asked about the defendant in more recent years, her parents described her as a good kid who helps out with chores around the house and in the care of her younger sister. They reiterated the limitations she has due to her intellectual disability, and emphasized the level of dependence she has on them. Mr. Flores-Moya estimated the defendant functions with the intellectual capability of a 9-10-year-old child. The defendant does not leave the house without their supervision, and engages in all leisure activities outside the home under their watch. Mr. Flores-Moya noted if the defendant were to venture outside on her own, she would quickly become lost.

Regarding the offense, the defendant's parents felt she was incapable of its commission entirely on her own. They stated her intellectual disability would have prevented her from generating the idea to post a threat and then actually follow through with the posting. Her parents felt someone must have told the defendant to post the threat, as someone must tell her to do something in order for her to act. Both sincerely doubted she had the initiative to commit the offense on her own. The defendant's parents did share that the defendant had told them she had been bullied at Edison High School, but that the school was alerted and handled the situation. The defendant's parents were unaware she had issues with any East High students. When asked about the shotgun, the defendant's stepfather stated it had been in the basement of one of his rental properties, and the defendant never had access to it. He further reported he never had any ammunition for it. The defendant's parents reiterated the defendant would have never actually used violence and would be unable to ever carry out such a threat due to her intellectual disability.

**Sentence Investigation Report**

The defendant's parents asserted the defendant is not a threat. They reported she has never done anything wrong until this incident and has always followed the rules. They stated the defendant loves Rochester and the USA. They proclaimed she is not a criminal and implored she be released from detention due to its traumatic effects. They again emphasized the defendant is mentally 9-10 years old, and that they treat her as such. The defendant's mother recounted they turned down out-of-home services for the defendant due to her dependence on her parents. Her parents did state that they and the defendant would cooperate with Probation if ordered.

**SOCIAL CIRCUMSTANCES**
**Education, Employment, and Military**

## Sentence Investigation Report

The defendant graduated from Edison High School on 6/22/18 with a Skill and Achievement Commencement Credential. The NYS Department of Education notes this credential is only available to student with severe disabilities.

School records were requested and received from the Rochester City School District on 6/18/18. Edison High School was contacted via telephone on 7/16/18, but the receptionist stated only clerical staff was in the building over the summer.

The defendant was classified as a Special Education student with the classification Intellectual Disability. She was enrolled in the Work Based Learning program at Unity Hospital in food service.

Special Education testing indicates the defendant has a Full Scale IQ of 57 (0.2 percentile) on the Wechsler Adult Intelligence Scale IV. Her scores on the Wechsler included the following: Perceptual Reasoning Index Score 60 (0.4 percentile), Processing Speed Index 62 (1 percentile), Verbal Comprehension Index 68 (2 percentile), and Working Memory Index (1 percentile).

Her Individualized Education Plan (IEP) noted she reads at a 5th grade level. She is able to write basic sentences, but struggles with basic capitalization and punctuation. She tested out at the mid-kindergarten level in math, and is only able to complete very basic addition and subtraction. Her IEP noted she is very friendly and social with peer and adults, and will help peers who are struggling. The defendant's IEP also indicated she is unable to read some social situations and has trouble understanding when people should be left alone. She has a hard time when corrected by an adult and accepting consequences for her own behavior. The IEP stated most of the time, she follows classroom and school rules and expectations. It further stated she needs clear, predictable limits and consequences for behavior. Overall, her IEP indicated she presents global delays in cognitive, perceptual, language, academic, and adaptive functioning which compromise her skill development and performance. Her annual goals included identifying and summarizing information in 4th grade level texts, solving word problems involving currency using the dollar and cents symbols, and riding the RTS bus independently. Her independent living skills area noted she will live at home with her mom.

She had two minor disciplinary infractions throughout her entire time in the District, the most recent of which was five years ago for not following directions (1 day in-school suspension). In 2011, she received one day of in-school suspension for using foul language.

When asked about employment, the defendant stated she has food service experience through her school program, which saw her work in the kitchen of the school and at Unity Hospital, primarily clearing dishes, washing tables, and assembling food trays. She stated she would someday like to work at Blue Cross Arena as an usher, become a WWE wrestler, and work at the SPCA. The defendant noted she feels bad for the abused animals when ASPCA commercials are broadcast, and wants to help them.

The defendant has never been a member of the military.


Sentence Investigation Report

### SOCIAL CIRCUMSTANCES
### Physical and Mental Health

The defendant and her parents noted she is in good physical health. She has never been hospitalized and does not take any medication. The defendant's stepfather disclosed the defendant did not have a primary care physician due to lack of insurance, but that he now has excellent insurance through his employer, and the entire family is now covered.

The defendant and her parents reported the defendant has no mental health diagnoses and has never been in mental health treatment or counseling. She did receive work and habilitation services through school due to her intellectual disability.

### SOCIAL CIRCUMSTANCES
### Drugs and Alcohol Usage / Treatment History

The defendant and her parents stated she has never used drugs or alcohol.

### SOCIAL CIRCUMSTANCES
### Other

# Sentence Investigation Report

## EVALUATIVE ANALYSIS

Before the Court for sentencing is 21-year-old Abigail Hernandez who has admitted to Falsely Reporting An Incident in the Third Degree.

This is the defendant's first arrest and first conviction. By all accounts, the defendant suffers from a significant intellectual disability and functions significantly below her chronological age. She lives at home under the supervision and care of her mother and stepfather, as dictated by her disability. The family home appears to be an appropriate environment and her parents appear to care about her and her well-being a great deal. She follows the rules and helps out in the home, does not leave the home unsupervised, spends no time with negative peers, has never used drugs or alcohol, and has had no police contact before this incident. The defendant is heavily dependent on her parents, and appears unable to live on her own.



The defendant admitted to committing the offense, but at the time of offense likely had no insight as to the full ramifications of her actions. There appears to be no intent behind the threat she made. While the defendant admitted to the offense, such actions should be viewed through the lens of a much younger individual than the defendant's age would suggest. It seems this incident began as a verbal spat among peers that was taken too far by the defendant, who likely lacks the cognitive ability to understand on her own how far she had gone and why her actions were so egregious. The defendant appears to be remorseful for her actions, but the question remains whether she fully understands why her conduct was so unacceptable.

Based upon the aforementioned strengths and weaknesses, the lawful prognosis for the defendant is positive.

Probation understands there is a sentence promise of 3 years probation supervision. The value and potential benefit of imposing such a sentence on this particular defendant for the instant offense is uncertain given the totality of the circumstances. However, given the greater concern for public safety, Probation concurs with the sentence promise of probation.



## RECOMMENDATION

Probation Supervision per the attached conditions.

## RECOMMENDED CONDITIONS

## CERTIFICATE OF RELIEF FROM DISABILITIES

## REQUEST TO EXEMPT PORTIONS OF REPORT FROM DISCLOSURE

Respectfully Submitted,

Adam Phillips  7/18/2018                                        Approved By

_____
**Probation Officer**

_____
**Supervising Probation Officer**